United States v. Hinz, Appeal No. 25-2118. Good morning, Mr. Roy. Thank you, Judge. Good morning. May it please the Court. My name is Attorney Michael Roy on behalf of Jerid Hinz. I want to start by discussing the registration requirement. I'm happy to answer any questions about standard of review, but I think that issue is pretty straightforward. And the reason I want to highlight the registration issue is because I think it's symptomatic of a larger problem with how the revocation proceedings are kind of fast-tracked. It's almost like an assembly line. This seems to have been a legal registration requirement that was copy and pasted into Western District of Wisconsin orders for a couple decades. The district court gave no authority for where this came from. The government provides no authority on appeal for where this could have come from. And practically speaking, I'm not sure how much it's going to affect Mr. Hinz in the future, but like I said, it's symptomatic of the assembly line nature of revocation. This was a two-year prison sentence, no written filing from the government, one-page written filing from the defense, 15-page transcript. It's as short of a proceeding as possible. And then I think that ties into our primary argument about the prison sentence. Can I ask you some more about the registration requirement? Because I had not seen anything like that before myself, and I agree. I'm trying to figure out what we should do with it. I don't think either side, you included, or the government, has identified a source of authority for the court to impose that. If it were a recommendation to BOP, I'm not saying it reads as a recommendation. I agree it reads as a requirement. But if it were rewritten as a recommendation, would that be permissible for the district court to do? I suppose if it's a non-binding recommendation, it gets a little bit more of a gray area. District courts obviously put non-binding recommendations in all the time about location, about RDAP, usually things that benefit the defendant. I'm a little hesitant to say that any recommendation would be okay because I think back to the Sheriff Joe controversies years ago where they were putting people in pink underwear in the sun in the desert. If the judge recommended something absolutely insane, I don't know if that would be okay. This doesn't fall into that category. So I'm a little hesitant to commit to something directly. I just know in this case, because it's not a recommendation, it's phrased as a binding order, I think it's appropriate to strike it. And as the government says, if the prison sentence stays in place, we agree with the government, it can just be excised from the judgment. It doesn't have to go back down to remand. I'm curious about this discussion about being rephrased as a recommendation because it would be a recommendation for what? If I take the party's briefs, I still don't know what it's registration for or to whom or for what purpose. And anything that a district court recommends or orders must be tied to the purposes of sentencing. What would I be missing there? I think that, candidly, it was probably put in as a matter of course. I don't think anyone really thought about it at the time. In terms of how it ties into sentencing, obviously if someone has a sex offense, they can order registration under SORNA. I'm saying, we know the parties agree it's not a sex offense case, so what would this registration be for? I'm not sure, unless there's some sort of shadow registration. Well, wait, sorry. Doesn't 18 U.S.C. 4042B impose a registration requirement for prisoners like Mr. Hines had he been put on supervised release? There's a notice requirement. I'm sorry, notice requirement, yeah. It seems, I'm guessing, that this is maybe like a copy and paste from one of those cases, right? But then he's not on supervised release here, so it doesn't apply to him. But if he were, that would apply to him, right? Correct, if he was going back on supervised release, then I think you could construe this as the court just stating as a fact what's already applicable as a matter of law. I'm not sure, as a matter of practice, who the BOP calls up to say, hey, by the way, we're releasing someone in your community, presumably Dane County Madison officials, someone like that. But in this case, I honestly just don't know what they do in response to this order. And turning to the prison sentence, I think this is just one more symptom about how the record's sort of rife with confusion. It's pretty muddled what exactly everyone is thinking Mr. Hines should be sentenced for. I think it's clear that the only thing that was proved was what was stipulated. So that would be the technical violations, and then a new crime violation based off possession of methamphetamine, which then also ties into a technical violation for use of methamphetamine. In terms of the court's confusion, going off the written order, there is, in addition to the judge actually saying he possessed a gun, which is not something that was proven, the discussion of new charges that he faces. And I do have a mistake in the opening brief where I said maybe the judge thought he was already charged. That was supposed to be future tense. I meant maybe the judge thought he was about to be charged. And there wasn't evidence for that yet, except for the government's vague gesturing about maybe we're going to do a trafficking charge. That hasn't materialized. There's not been a trafficking charge yet. When the court talks about faces new charges, presumably he's referring to the charges that were already dismissed and then read in, saying I'm not going to consider those. But then the possession of methamphetamine was what was read in as part of his new charges. That was the basis for the guideline range. So I'm not sure what the judge is saying he's not considering if he presumably is relying on the new charges to also set the guideline range. That's one of the stipulated offenses. And then in the transcript itself, there is, it's again kind of muddled. I think the government would have a good point about the pre-sentence report and history of violence but not in treatment if the judge hadn't said then in the later written order, I find that he, or he doesn't use the word find, but under the facts, he violated the condition against possessing a firearm by possessing a firearm. Also I think telling in the transcript is the part where the judge is referring to his history of lenience with Mr. Hines. His first revocation, I mean, was a slap on the wrist. It was a pretty short prison sentence on his first revocation, mainly because the government didn't try to prove the domestic violence charges, which were then later dismissed. So he got some, I forget the exact number, but a small number of months for the first revocation. And then the judge says, yes, I've been lenient on you in the past. And if that was tied into a sort of deterrence rationale, that you're just not complying, lenience isn't working, we need to do something longer, that would be fine. But what the judge says is my lenience has provided more opportunity for you to put yourself and the public at risk. I'm not sure what the court's referring to when it says he put the public at risk because anything that puts the public at risk would have been something that the government didn't press at the hearing. What he's actually being revoked for is technical violations and personal possession and use of methamphetamine. So, I mean, I guess he's putting himself at risk, but I don't see where the protection of the public comes in unless the court is adopting something else. And that's why I say we should turn to the written order as the authority on what the court relied on. The court says he possessed a firearm. Is there no color rule reading the government could have of that that the bail jumping, which was read in, and the possession of methamphetamine would constitute public risk? Well, possession of methamphetamine, I think, would be risk to himself. I don't know where the public risk would come in because it's not distribution of methamphetamine. The bail jumping, based off this record, I think we have to assume bail jumping is the methamphetamine. Do you know what the conduct underlying the bail jumping was in the state complaint? Well, the original state charges were... I have to check my notes here. There was, along with the possession, the 2025 case, he was charged with bail jumping in possession of meth. I guess I'm not sure what the conduct was they alleged, but in possession of meth would be bail jumping. He's violating bail by community of crime. It could be a whole bunch of things, basically. And, I mean, like in Kandor, I did look up. There were no new state charges when I filed the opening brief. There has been a new state case that has been opened for its case number 2025 CF2971 in Dane County for reckless injury and felon in possession of a firearm. Obviously, that wasn't before the district court at this revocation. There was no evidence about this at that time. The same facts were available. The government could have tried to prove it by a preponderance of the evidence at the original revocation, so I don't think there's any argument on remand they could argue that now, based off the new charges. And then back to bail jumping, neither Mr. Hines' counsel nor the government provided any detail to the court about the bail jumping as I read the transcript. Right. That's why I think the assumption has to be that it relates to the one new crime he admitted to, which would be the possession of meth. I'll say, too, it wasn't even really a brief or sentencing memorandum that defense counsel filed. It was like a letter. I think they were kind of trying to be a little bit cute with it when they were saying, we admit he committed new crimes and we acknowledge there's some new plea. They're not really nailing down what he's admitting to. It's not until a sentencing transcript where they're saying, yes, he admitted to things beyond the new charges. Sorry, beyond the old charges from 2024. If there's no further questions, I'll take to the government. Thank you. And good morning to you, Ms. Oswald. Good morning. May it please the court, Barbara Oswald on behalf of the United States. The revocation order should be affirmed in this case because the district court did not rely on improper considerations in revoking supervision and imposing sentence. Additionally, there was no procedural error when the court included the registration requirement. And even if that was error, the appropriate remedy, as it seems to be conceded by the defendant, is for that language to just be struck from the district court's order. Turning first to the firearm allegation, as this court is aware, to show procedural error, a defendant must show that the information before the sentencing court was inaccurate and unproven and that the sentencing court relied on it. It is that second prong that is fatal to this appeal. There is absolutely no evidence in the record that the sentencing court relied on the firearm allegations when it revoked supervised release. And, in fact, we know the district court did not rely on those allegations. And how do we know that? Because it said so four different times, twice at the hearing and twice in the written order. At the hearing, when it was discussing those allegations with defense counsel, it said it understood that the defendant was not admitting to those allegations and it specifically said let's just set those to the side for a moment. It then talked with the government lawyer about the government's position on what the violations were. The government indicated it was not going to rely on those allegations. And then later, when imposing sentence, the district court said, setting aside the allegations that really aren't at issue here, we have very serious violations. Then in the written order, the district court said the defendant has not stipulated to the underlying conduct related to that shooting incident, firearm incident, and the court will not consider it here. The district court then referenced that no criminal charges had been filed as it related to that incident and said the government will not pursue these alleged violations of supervised release and the court will not consider these alleged violations for purposes of this judicial review. So, again, four times the court indicated it was not considering those allegations. It did erroneously reference a violation of Condition 12, which is possession of a firearm. But, again, it explicitly stated it was not considering that conduct. So at most, that reference to Condition 12 is harmless error. And the record is clear that the district court did not rely on those allegations. But in order to get a do-over, Mr. Hinz is saying that there was a lot of confusion. Can you pause there, though? What's your response to counsel's argument that harmless error just would not apply here? There's only error if the court relied on improper information. And the court was very clear that it was not relying on those particular allegations. And so I think that it was just a mistake for the court to have made reference to Condition 12. It made very clear that it was not considering that a violation when it went on further in the written order. So there's just no basis to say that the court relied on that. And without reliance on that, there's no error at all. Ms. Oswald, can you help me a little bit with this registration requirement? Where does this come from? Is this 18 USD 4042B copied in the wrong place? What's happening here? I can't answer the question about why the court included that in the order. I can say that opposing counsel is correct that this is standard language that has been included in Western District of Wisconsin supervision revocation orders many times. So it's possible that it was a cut-and-paste error, and if that's the case, then Mr. Hintz had the opportunity to correct it by asking for correction under Rule 35. But it's also possible that the court was very concerned about Mr. Hintz's risk to the community. It was very clear at the revocation hearing that he saw that Mr. Hintz had a history of violence when he was not in treatment. He was very concerned about Mr. Hintz's violent behavior and the risk to the community. So it's very possible that the court was concerned about that and wanted law enforcement alerted to his release before he was going back out into the community. And cutting and pasting or using the language that it would typically use under 4042B probably made sense in that regard. But again, I can't speculate as to why the court specifically included that language in the order. There's certainly nothing that we have been able to find to say that it's an error for the court to have done so. 4042B requires it to be done in certain cases, but it certainly doesn't preclude it, the district court, from choosing to include that requirement. But regardless, if this court finds that it was error, again, the proper remedy would be to excise that from the written order and affirm on that basis. Going back to the primary argument that Mr. Hintz is making with respect to the firearm allegation, one of the things that he takes issue with is that the district court made a reference to his history of violence and that somehow that must mean it was relying on the firearm allegation, and that's just simply not the case. At the hearing, the district court stated accurately that Hintz has a history of becoming violent when he's not in treatment. There are several things that are noteworthy about that statement. First, it comes after the court indicated that it had gone back in the record, including to the PSR, to remind itself of Mr. Hintz's mental health issues. That history of violence comes primarily from Mr. Hintz's own statements to the PSR writer and a competency evaluator, as well as his own attorney's statement to the sentencing court before the initial sentencing. Mr. Hintz told the PSR writer that for the past 10 years he had been taking medication to suppress his violent behavior. The evaluator noted that Mr. Hintz had described a history of anger, irritability, violent impulses, and hostility. Mr. Hintz told the PSR writer that he had broken the principal's nose and was expelled from school. The PSR also noted prior convictions for battery, as well as read-in charges for armed robbery and intimidating a victim. And it also noted numerous instances of assaultive behavior towards staff and students at school, none of which was objected to prior to the initial sentencing. And again, his attorney sent a letter to the court before the initial sentencing saying that his mental health manifests itself in many ways, including violent behavior. So the record is replete with undisputed evidence that Mr. Hintz has a history of violence independent of the allegations with respect to the shooting and the firearm. All of that information in the PSR was fairly recent. That was prepared only two and a half years before this revocation hearing. And again, the court was referencing that violent history in connection with Mr. Hintz's lack of treatment, which was a big issue with respect to his supervision violations and other offenses. So unless the court has no further questions, we ask that the district court order be affirmed in its current state or if the court believes there was an error with respect to that registration requirement, that it be affirmed with modification by excising that particular language. Thank you, Ms. Oswald. Thank you. Mr. Roy, we'll give you one minute. Thank you, Judge. I want to briefly respond to the government's assertion that the court said four times it wasn't considering it. I think the transcript is more muddled than the government claims. Yes, early on, the court set aside disputes, quote, for the moment. That's not definitive. Later on, when the court's even setting aside the allegations that aren't really at issue here, we have serious violations. The court's not identifying which allegations really aren't issued here. Likewise, in the court order, as I mentioned in my opening argument, there's some confusion about what new charges the court's referring to. When the court's saying it's setting aside violations, it could be referring to the 2024 domestic violence charges that were dropped. It could be referring to the shooting but not the possession of the gun. There's lots of different possibilities. I think if we can't tell on appeal what specifically the court considered and what it didn't, we should take the court's word for it in the written order when it says that it thought Hines possessed a firearm. If there's no further questions, thank you. Thank you. We will take the case under advisement. We thank counsel.